## CHICAGO, R. I. & P. R. CO. et al. v. AUSTIN.

No. 7470—Opinion Filed Oct. 10, 1916.

Rehearing Denied March 13, 1917.

(163 Pac. 517.)

(Syllabus by the Court.)

**1. Appearance—Jurisdiction—District Court —Waiver.**

Where pending appeal to the Supreme Court from a judgment rendered in the superior court of G. county the records, files, and papers of a cause were transferred to the district court of that county pursuant to chapter 77, Sess. Laws 1913, and upon reversal of said judgment mandate from the Supreme Court was lodged in the district court, and defendants thereafter appeared generally in said court in said cause, they thereby waived the right to object to the jurisdiction of said court, even though said chapter 77 was afterwards held unconstitutional.

**2. Same.**

Where defendants appeared in a cause and submitted to the court nonjurisdictional questions which could not be submitted and determined on a special appearance, they recognized the general jurisdiction of the court and waived all irregularities in the manner by which that court obtained jurisdiction of their persons.

**3. Courts—Transfer of Causes—Validity— Statute.**

Chapter 20, Sess. Laws 1915, validating all proceedings had, orders made, judgments rendered, or decrees entered by the district courts or the judges thereof in causes transferred to said district courts pursuant to chapter 77, Sess. Laws 1913, had the effect of rendering valid the transfer of the records, files, and papers of a cause of which the district court had concurrent jurisdiction from the superior court to the district court of a county and the subsequent proceedings had therein.

**4. Statutes — Curative Acts — Legislative Power.**

Curative acts may apply to pending proceedings, and, while the Legislature cannot annul or set aside the judgment of a court, it may remove a defect on which the judgment proceeded.

**5. Appeal and Error—Parties—Defendants in Error—Appellate Jurisdiction—New Trial.**

Plaintiff brought suit against defendant railway company and members of its train crew for damages for personal injuries alleged to have been received because of negligence in the operation of one of defendant company's trains by the individual defendants composing the train crew. Judgment was rendered for plaintiff and against defendant company and in favor of the individual defend-

ants. The defendant railway company appealed to the Supreme Court, naming its co-defendants as defendants in error. The judgment was reversed, and the cause remanded, with directions to the trial court to grant plaintiff a new trial as to all defendants. After remand plaintiff dismissed as to all defendants except the railway company and the conductor. A second trial resulted in judgment for plaintiff against both defendants, who join in the present appeal and plead the judgment at the first trial in favor of the conductor as a bar to plaintiff's right to recovery. Held: (1) On the former appeal the conductor and other members of the train crew were proper and necessary parties thereto, and were properly joined as defendants in error; (2) that the judgment rendered at the first trial was a joint judgment and the Supreme Court obtained jurisdiction to reverse, vacate, or modify the same or direct that such be done by the trial court as to all parties; (3) upon the reversal of said judgment plaintiff was entitled to a new trial as against all the defendants in the action.

### 6. Appeal and Error—Subsequent Appeal— Law of Case.

Where on a former appeal the rights of the parties under the issues made by the pleadings and the facts disclosed by the record have been determined, such determination becomes the law of the case, and on a second appeal involving the same questions the Supreme Court will be controlled by the conclusions announced in the former decision.

### 7. Railroads—Persons on Track—Care Required.

Where it appeared from the evidence that plaintiff, who was injured, was traveling across the yards and tracks of a railway company along a well-defined pathway which had been constantly used by the public in large numbers for eight or ten years, and two members of a train crew engaged in switching in the yards across which plaintiff was passing saw him and knew of his presence, the defendant company and its employes in charge of its engine and cars were bound to use reasonable care to avoid injury to him.

### 8. Same—Injury on Track—Negligence.

Where, with knowledge of plaintiff's presence upon its premises, defendant kicked four cars upon a switch across which plaintiff was about to pass, without any warning or signal notifying him of the approach of said train of cars, and regardless of the fact that such acts might result in plaintiff's death or serious injury, defendant was guilty of gross negligence.

### 9. Same—Warning Against Trespasser— Effect.

Nor does the fact that the railway company had placed signs along its right of way warning the public against trespassing thereon absolve it from the duty imposed by the custom of the public which had ripened into a license where it appears that the custom

had continued unabated after the placing of the signs.

### 10. Appeal and Error—Harmless Error—Admission of Evidence.

A case will not be reversed for error in the admission of evidence unless it appears upon an examination of the entire record that such error has resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

Error from District Court, Grady County; T. P. Clay, Assigned Judge.

Action by J. E. Austin against the Chicago, Rock Island & Pacific Railway Company and Ed Connors and others. Judgment for plaintiff, and the named defendants bring error. Affirmed.

See, also, 43 Okla. 698, 144 Pac. 1069.

C. O. Blake, R. J. Roberts, W. H. Moore, J. G. Gamble, Barefoot & Carmichael, and Harris, Nowlin & Singleton, for plaintiffs in error.

Bond, Melton & Melton and McKnight & Heskett, for defendant in error.

HARDY, J. J. E. Austin commenced this action in the superior court of Grady county against the Chicago, Rock Island & Pacific Railway Company, Ed Connors, conductor, J. S. Carmack, engineer, and Ray McCormick and Charles Best, brakemen, claiming damages for personal injuries alleged to have been received by him on account of the negligent operation of one of the defendant railway company's trains. At the first trial the court sustained a demurrer to the evidence as to the defendants Carmack, McCormick, and Best, and overruled the same as to the defendants railway company and Connors. Thereupon the trial proceeded and resulted in a verdict and judgment in favor of plaintiff and against defendant railway company and in favor of defendant Connors. The railway company in due time filed petition in error with case-made attached, joining its codefendants as defendants in error; and on March 3, 1914, this court rendered an opinion reversing said cause. C., R. I. & P. R. Co. v. Austin, 43 Okla. 698, 144 Pac. 1069. Petition for rehearing was overruled, and upon motion of defendant in error, Austin, the cause was remanded to the trial court, with directions to set aside the judgment and grant plaintiff a new trial as to all of the defendants therein. On March 22, 1913, the Legislature enacted chapter 77, Sess. Laws of 1913, p. 119, by the terms of which it was sought to abolish certain superior courts, including the superior court of Grady county. Said act provided for the transfer of pending cases of which the district court had concurrent jurisdiction to the district

courts of the county in which such superior courts were located, and under this provision the records, files, and papers in this case were transferred to the district court of Grady county, and when the mandate of this court was issued it was transmitted to and lodged in the district court of Grady county. After remand of the case it was dismissed as to defendants Carmack, McCormick, and Best, leaving the action pending against the railway company and Connors. The second trial resulted in a verdict and judgment against both defendants, who join in the present appeal.

It is insisted that chapter 77, Sess. Laws 1913, supra, was invalid, that the superior court of Grady county was not abolished thereby, and that this case was wrongfully transferred to the district court, which latter court had no jurisdiction of this action.

In Hatfield v. Garnett, 45 Okla. 438, 146 Pac. 24, it was held that said chapter 77 was invalid for the reasons therein stated. On September 12, 1913, prior to the reversal of this case on the first appeal, the defendant railway company filed in the district court of Grady county a petition for new trial in which it alleged that the superior court was abolished, and that the proceeding was begun in the district court as the successor thereto. To this petition defendants Connors, McCormick, and Carmack filed an answer, admitting the allegations thereof, and consenting that judgment might be issued as prayed for. On December 7, 1914, after mandate had been filed and recorded, plaintiff, Austin, filed a motion in the district court to set aside the judgment rendered in the superior court as to all defendants, which motion was heard on December 23d, at which time defendants appeared and contested the same and reserved exceptions to the order of the court. On January 15, 1915, plaintiff moved to dismiss without prejudice as to defendants Carmack, McCormick, and Best, which motion was sustained and exceptions reserved by defendants railway company and Connors. On the same day said defendants filed motion to remand to the superior court, which motions were overruled, and thereupon filed pleas to the jurisdiction, which were denied, and then by leave of court withdrew their answers and interposed demurrers to the petition on both jurisdictional and nonjurisdictional grounds. These demurrers were overruled, and defendants thereafter filed motion for judgment on the pleadings based upon nonjurisdictional grounds. Upon the overruling thereof issues were joined and trial had, with the result stated.

From the foregoing statement it is apparent that defendants entered a general appearance in the district court. By appearing generally and contesting the motion to set aside the judgment rendered in the superior court and reserving exceptions to plaintiff's dismissal as to certain defendants, and by interposing a demurrer to plaintiff's petition on both jurisdictional and nonjurisdictional grounds, and by filing motion for judgment on the pleadings, both of said defendants submitted themselves to the jurisdiction of the district court, and waived objections that might otherwise have been urged thereto. They cannot be permitted to appear in that court unreservedly for the purpose of invoking its jurisdiction in an effort to obtain affirmative relief, and, when the relief sought is denied, deny the jurisdiction of the court in the premises.

In Rogers v. McCord-Collins Merc. Co., 19 Okla. 115, 91 Pac. 864, in the second paragraph of the syllabus, it is held:

"Where a motion is made in which questions are raised which go to the jurisdiction of the court over the parties, and in which questions are also raised which cannot be raised by special appearance, but can only be heard upon a general appearance, the parties will be taken and held to have entered a general appearance. * * *"

In Walton et al. v. Kemmamer et al., 39 Okla. 629, 136 Pac. 584, it is said:

"Where a defendant comes into a case, even though he has not been properly summoned, and alleges and submits to the court nonjurisdictional questions—questions which could not be raised in a special appearance— he recognizes the general jurisdiction of the court, and waives all irregularities that may have intervened in bringing him into court."

To the same effect see, also, the following cases: Austin Mfg. Co. v. Hunter et al., 16 Okla. 86, 86 Pac. 293; Ziska et al. v. Avey et al., 36 Okla. 405, 122 Pac. 722; Haynes, Adm'x, v. City Nat. Bank, Lawton, 30 Okla. 614, 121 Pac. 182; Welch v. Ladd, 29 Okla. 93, 116 Pac. 573; Pratt v. Pratt. 41 Okla. 577, 139 Pac. 261.

The decisions cited from this court do not involve a change of venue, but the same principle governs as in this class of cases. When the former judgment was reversed and the cause remanded, it then stood as if no trial had taken place, except that the rule of law announced in the opinion of the Supreme Court must be regarded as the law of the case on the second trial, and when the case was transferred to the district court, even though the venue was wrongfully changed, defendants entered a general appearance in that court, and thereby waived the right to urge any objection thereto. 4 Enc. Pl. & Pr. 484; 40 Cyc. 181, 182; Polk County v. Hierb, 37 Iowa, 361; Vinsen v. Lockard et al., 70

Ky. 458; Andrews v. Beck, 23 Tex. 455; Cupples et al. v. Hood et al., 1 Mo. 497; Taylor v. Atl. & Pac. Ry., 68 Mo. 397; Lake Erie & Western R. R. Co. v. Lowden, 7 Ind. App. 540, 34 N. E. 447, 747.

An additional reason why this question cannot now be urged is that by section 21, c. 20, Sess. Laws 1915, p. 20, it is enacted:

"All proceedings had or acts done by the superior courts, or the officers thereof, which are discontinued by this act. and all proceedings had, orders made, judgments rendered or decrees entered by the district courts or the judges thereof, in causes originally instituted in or taken to said superior courts pursuant to the authority attempted to be conferred by the provisions of House Bill No. 370. approved March 22, 1913, are hereby validated and legalized. * * * "

In consideration of legislation of this character the important question to be considered in determining its validity and effect is to ascertain whether the acts which it attempted to validate would be effectual for the purposes intended if a valid law enacted prior to the doing thereof had directed that they be done as they were done. In such cases the authority of the Legislature to validate them thereafter is well established, and rights predicated upon such curable defects are not deemed meritorious nor entitled to the protection ordinarily accorded to vested rights, 2 Lewis' Sutherland, Stat. Const. 1232.

Had said chapter 77 been a valid enactment, no question could have arisen as to the validity of the transfer of said cause from the superior court to the district court; and, this being true, under the rule just stated, the act of 1915 would make valid such irregular transfer.

The rule is thus stated in 2 Lewis' Sutherland, Stat. Const. 1237, as follows:

"Curative acts apply to pending proceedings. It is truly said that the bringing of suit vests in a party no right to a particular decision, and his case must be determined on the law as it stands, not when the suit was brought, but when the judgment is rendered. It is no objection to a curative act that it validates what has previously been declared invalid in a judicial proceeding. The judgment may furnish the occasion for the act. Of course, the Legislature cannot annul or set aside the judgment of a court, but it can remove a defect on which the judgment proceeded."

See, also, Cooley's Const. Lim. (7th Ed.) 543.

Since the trial of this case in the district court, chapter 20, Sess. Laws 1915, p. 20, became effective, which act abolished certain superior courts, including the superior court of Grady county, and to reverse this case upon the general ground that trial was had in the district court instead of the superior court could avail plaintiffs in error nothing, for a reversal would require that the cause be remanded to the court in which the trial was had, and the question has now become moot.

The judgment rendered at the former trial is pleaded by both defendants as a bar to plaintiff's right of recovery, and the action of this court in directing the trial court to set aside said judgment as against all of said defendants and the order of the district court made in pursuance of said mandate are said to be void and of no force or validity, for the reason that this court was without jurisdiction to review the judgments rendered in favor of the individual defendants or to direct the trial court to set aside the same and grant plaintiff, Austin, a new trial. The correctness of this proposition depends upon the character of that judgment. In its first appeal the defendant railway company joined defendant Connors and the other defendants with plaintiff, Austin, as defendants in error. That this was the proper practice and that said defendants were necessary parties to that proceeding because of the fact that their interests would be adversely affected by a reversal of said judgment is now too well settled in this state for argument. The rule was first announced in the early days of the territorial court, and has been consistently followed since that time, and, while this court in the Bezdicheck Case, 33 Okla. 688, 126 Pac. 821, doubted the correctness of that rule, yet, owing to the fact that it had been so long established, it declined to change it, and declared that the rule of certainty in judicial proceedings prevented adopting a contrary rule. Humphrey et al. v. Hunt, 9 Okla. 196, 57 Pac. 971; Board Com'rs et al. v. Lemley, 23 Okla. 306, 101 Pac. 109; K. C., M. & O. R. Co. v. Williams, 33 Okla. 202, 124 Pac. 63; Ft. S. & W. R. Co. v. Wilson, 33 Okla. 280, 124 Pac. 948; Denny v. Ostrander, 33 Okla. 622, 127 Pac. 390; Chickasha Lt., Ht. & P. Co. v. Bezdicheck, 33 Okla. 688, 126 Pac. 821.

In Humphrey et al v. Hunt, 9 Okla. 196, 59 Pac. 971, Hunt commenced an action against several defendants for damages for the death of her husband. Trial resulted in judgment for plaintiff against certain defendants, and in favor of defendant Belt and against plaintiff. Defendants against whom judgment was rendered appealed and served their case-made on plaintiff only. Motion to dismiss was sustained, and in the opinion it was said:

"It is clear that Belt might be affected by a reversal of the judgment by which he was discharged from all liability to the plaintiff, and, if it should be vacated and set aside and

a new trial granted, he would have to defend in another trial and take the chances of a verdict being rendered against him. If he had been made a party, he could urge any reason he may have why the judgment should stand. * * * It might be argued that, inasmuch as Mrs. Hunt failed to appeal from the judgment in favor of Belt, it became final as to him. This however, cannot be true. The plaintiff submitted the entire matter to the jury, and, while she failed to recover a judgment against all of the parties whom she sued, she was satisfied with it because she failed to appeal. But the judgment was a joint judgment, and all of the parties affected thereby must be made parties and given an opportunity to be heard, or the judgment will not be disturbed."

This decision announces three propositions: (1) That all of the defendants were necessary parties to a proceeding in error; (2) that Mrs. Hunt's failure to appeal from the judgment in favor of Belt did not cause that judgment to become final as to him; (3) that the judgment appealed from was a joint judgment.

If the propositions there laid down be the law of this case, the judgment appealed from was a joint judgment, and Connors and the other defendants were necessary parties to the proceedings in error, and a reversal of the judgment would require him to defend upon another trial and take the chances of a verdict being rendered against him thereat. This case has been followed consistently from that time until this by both the territorial and this court.

In K. C., M. & O. R. Co. v. Williams, 33 Okla. 202, 124 Pac. 63, plaintiff sued the Kansas City, Mexico & Orient Railway Company and C. B. McGee in damages for personal injuries. Judgment was rendered for plaintiff and against the defendant company, and in favor of defendant McGee, and the company appealed, without making McGee a party thereto. Following the case of Humphrey v. Hunt, supra, the court dismissed the case on the ground that McGee was a necessary party thereto, and that he would be prejudicially affected by a reversal thereof.

In Ft. S. & W. R. R. Co. v. Wilson, 33 Okla. 280, 124 Pac. 948, plaintiff sued the St. Louis & San Francisco Railway Company and the Ft. Smith & Western Railroad Company, and judgment was for plaintiff against the Ft. Smith & Western Railroad Company and in favor of the other defendant. The Ft. Smith & Western Railroad Company brought error without joining its codefendant, the St. Louis & San Francisco Railway Company, and the case was dismissed, the court quoting with approval the syllabus of Humphrey v. Hunt, and also quoted the language of said opinion hereinabove set out.

In Chickasha Light, Heat & Power Co. v. Bezdicheck, 33 Okla. 688, 126 Pac. 821, plaintiff brought action against the Chickasha Light, Heat & Power Company and one McGuire, and judgment was rendered against the Light, Heat & Power Company and in favor of the defendant McGuire. The Light, Heat & Power Company appealed, without making McGuire a party thereto, and, following the previous cases cited, the appeal was dismissed, the court again quoting with approval the language of the opinion in Humphrey v. Hunt.

These decisions establish the rule that the judgment appealed from in the present case is a joint judgment, and in order for the Supreme Court to acquire jurisdiction to review said judgment all parties who would be affected adversely by a reversal thereof must be made parties to the proceedings in this court. This was done, and the court thereby acquired jurisdiction to review said judgment and to reverse, vacate, or modify the same. The failure of plaintiff, Austin, to file cross-petition in error seeking to have the judgment in favor of the defendant Connors reviewed did not operate to cause said judgment to become final as against plaintiff, Austin, according to the statement in Humphrey v. Hunt, supra, the language of which opinion upon this point has been quoted with approval in the following cases: Ft. S. & W. R. R. Co. v. Wilson; Chickasha Lt., Ht. & Power Co. v. Bezdicheck, supra.

Expressions apparently to the contrary are found in some of the cases, but this question was not involved in any of the cases and is now presented for the first time. The expressions upon this point either way are merely dictum and were simply used in argument. There appears to be no conflict in the decisions rendered.

When it is determined that the judgment appealed from was a joint judgment and that the individual defendants were necessary parties to that proceeding because a reversal thereof might adversely affect their interests, there can be but one logical conclusion, and that is, when made parties to said proceeding and properly brought into the Supreme Court, this court acquired jurisdiction to reverse or vacate said judgment, even though it might adversely affect the interests of said defendants to the extent of requiring them, as stated in Humphrey v. Hunt, supra, to defend in another trial; for in no other way could their interests be adversely affected, and so, when this court, upon the motion of plaintiff, Austin, issued its mandate directing that said judgment as to all defendants be vacated and plaintiff granted a new trial therein, it clearly acted

within its jurisdiction, and the action of the district court in pursuance thereof was a valid exercise of authority by that court. Pangburn v. Buick Motorcar Co., 211 N. Y. 228, 105 N. E. 423.

All these questions were presented in the former appeal, and were then considered and determined and became the law of this case governing the conduct of the trial court, and are not now subject to re-examination in this court in this case. There being no material difference in the questions presented, the same cannot be again litigated. St. L. & S. F. R. Co. v. Hardy, 45 Okla. 423, 146 Pac. 38; Marth v. Kingfisher Com. Club, 44 Okla. 514, 144 Pac. 1047; Mehlin v. Superior Oil & Gas Co., 39 Okla. 565, 136 Pac. 581; Woodworth v. Town of Hennessey, 32 Okla. 267, 122 Pac. 224.

Plaintiff conducted a hotel northwest of Sixth street and north of the tracks of defendant railway company, in the city of Anadarko, and upon the day of the accident had started to the depot of defendant company for the purpose of mailing a letter upon a passenger train which carried mail. He traveled southeast to Sixth street, and thence in an easterly direction along the railway tracks of the defendant, between Sixth and Seventh streets, it being his intention to cross the tracks of the company between Sixth and Seventh streets, and at the east edge of Seventh street take a cinder platform leading east practically a block in length to the depot, which was located about opposite Eighth street, and it was while passing along this path between Sixth and Seventh streets that he was struck by moving cars and injured. The employes of the company were engaged in switching at the time and had made what is referred to as a drop switch, throwing some cars onto the track that plaintiff was crossing, which ran against and injured him.

The evidence tends to show that the path along which plaintiff was traveling had been used by the people of the town of Anadarko to go to and from the depot of defendant for at least eight or ten years, and that from 100 to 300 people used the path every day, and that it was used by more people at about the time passenger trains were due than at other times; that the use was continuous and was evidenced by a well-defined pathway. The accident occurred a short time before the east-bound passenger train was due. The cars by which plaintiff was injured were moving at a speed of from 10 to 15 miles per hour, with no engine attached, nor lights, nor signals. The brakeman on the cars that caused the injury saw a man going along this footpath towards the depot. He testified that he knew the cars were coming along on the track, and that, if the man continued in the direction in which he was going, he would necessarily cross the track onto which the loose cars were being thrown; that he made no attempt to warn this person nor in any way called his attention to the fact that the cars were about to be thrown onto the track. The fireman on the engine testified that he saw plaintiff going along the path before he reached the track at the point where he was injured; that he saw the cars going down the track and noticed that plaintiff had not seen them; that he made no attempt to warn plaintiff or to give any signals of any kind or character which would advise plaintiff that the cars were coming on the track until plaintiff was on the track and the cars were so near that warning was useless. Upon this state of the evidence it is contended that plaintiff was a trespasser and that defendant owed him no duty other than to refrain from wantonly and willfully injuring him.

We are furnished with exhaustive briefs by counsel upon this proposition, but we find it unnecessary to look further than the decisions of this court to determine the relative rights and liabilities of the parties in the premises.

In A., T. & S. F. R. Co. v. Jandera, 24 Okla. 106, 104 Pac. 339, 24 L. R. A. (N. S.) 535, 20 Ann. Cas. 316, plaintiff was injured while passing along a recognized way leading from a public street over the station grounds of a railroad company to its station platform for the purpose of mailing a letter on one of its trains, and it was held that plaintiff was there by implied invitation of the defendant, and that the railroad company was under obligation to use reasonable care to keep in a reasonably safe condition a recognized way through its grounds to its station platform, and a failure to do so resulting in injury to one passing along said way for the purpose of mailing a letter on one of its mail trains upon its arrival was actionable negligence.

The case of Rogers v. C., R. I. & P. R. Co., 32 Okla. 109, 120 Pac. 1093, involved a question very similar to the one here presented. The proof showed that some of the hands working at a compress some distance from town occasionally used the track as a walkway in going to and from their work, but failed to show that the company or any of its employes permitted or knew of such use or that the travel was either frequent, continuous, or had continued for such a time or to such an extent as to make a pathway or to afford other means of notice of its use by pedestrians, and, while the court

recognized the rule which we follow in this case, it held the proof was not sufficient to constitute the injured party a licensee, and recovery was denied.

The rule was again referred to in C., R. I. & P. R. Co. v. Stone, 34 Okla. 364, 125 Pac. 1120, L. R. A. 1915A, 142, and, after discussing the law as applicable to the facts of that case, it was said:

"The rule that a railroad company must exercise ordinary care and caution commensurate with the risk of accidents in operating its trains or cars at places where persons, although trespassers or mere licensees, are known or may be expected to be on the tracks, as in towns and cities, and for a failure to exercise such care they are thereby rendered liable, except where contributory negligence is shown, cannot be distinguished in principle from the instant case."

Again, in St. L. & S. F. R. Co. v. Hodge, 53 Okla. 427, 157 Pac. 60, this rule was recognized and applied upon a state of facts where it appeared that children of a community had been in the habit of going upon and across the tracks in the yards of the company for a long period of time, with knowledge of the company's servants or employes, for the purpose of playing thereon or to pick up coal in the yards of the company and near its coal chute; and it was held that the company, under the circumstances, was bound to use reasonable care to avoid injury to those whose presence on its premises it might reasonably anticipate, and that this was true even though the children on some occasions had been warned not to take coal or play about the premises of the company, and that such warning did not absolve the company from its duty to exercise reasonable care in operating its trains in the yards where it was shown that the former custom had not been discontinued.

The precise question here involved was presented in Wilhelm v. M., O. & G. R. Co., 52 Okla. 317, 152 Pac. 1088, L. R. A. 1910C, 1029. In that case the evidence showed that deceased was walking along a side track which had been used ever since the railroad was built by persons living in a certain vicinity as a near way in going from the east to the west part of Kenefick, Okla., and returning. The town was built principally on the west side of the track, and people had thus used this track until there was a well-defined pathway according to some of the evidence, and while plaintiff was going in a southerly direction, and immediately prior to the accident an engine pulling a number of cars had made what the witnesses described as a "kick switch," kicking seven cars onto the side track where deceased was walking, which ran over and killed him. The trial court sustained a demurrer to plaintiff's evidence. The contention was made that deceased was a trespasser, but it was held to be the duty of the court to submit to the jury the usage of the public in regard to the pathway and leave to them under proper instructions to determine whether under all of the facts and circumstances the deceased was a licensee with the permission of the railway company, express or implied, to use this track as a pathway, or was a mere trespasser. In the opinion it was said:

"The question of the duty of a railroad company to a licensee comes up squarely for decision in this court for the first time in the case at bar, and we think the sound and wholesome rule of law humane and conservative of human life is that, even though the person killed or injured is a bare licensee upon the track of the railroad company, the company is bound to exercise that degree of care and watchfulness to protect against injuring him that is commensurate with the probability that persons may be upon its track at that point. 2 Thompson on Negligence, sec. 1726."

See, also, C., R. I. & P. R. Co. v. Martin, 42 Okla. 353, 141 Pac. 276.

In the Wilhelm Case is was further said:

"In the case at bar the defendant not only hurled two, but seven, blind cars down this right of way, regardless of the fact that, under the circumstances as shown by the testimony, they were liable to cause the death or permanent injury of some one; and to hold under this undisputed evidence that that was not gross negligence was unmistakably error."

And in support of this statement of the rule applicable to such a state of facts the opinion collects a large number of authorities.

So in the present case, when the train of cars was thrown upon the track where plaintiff was about to pass, resulting in his injury, the defendant did not exercise that degree of care and precaution for plaintiff's safety that was its duty under the circumstances. The facts are even stronger here than in the Wilhelm Case. When it was made to appear that a well-defined pathway existed along the route which plaintiff was traveling, and this pathway had existed for a long period of time, and the use thereof by the public was continuous and in large number, these facts were sufficient to put the defendant company and its employes upon notice that persons were liable to be passing thereon and imposed upon them the duty to use that degree of care for the safety of human life that was commensurate with the circumstances; or, differently stated, to use reasonable and ordinary care to avoid injury to persons whose presence on its premises was

known, or whose presence it might reasonably have anticipated; and, under the circumstances disclosed by the evidence, defendant was guilty of gross negligence rendering it liable for any injuries occasioned thereby.

Nor does the fact that the defendant company had placed signs along its right of way warning the public against trespassing thereon absolve it from the duty imposed by the custom of the public which had ripened into a license, where it appears that this custom had continued unabated after the placing of said signs. St. L. & S. F. R. Co. v. Hodge, supra; Int. & G. N. R. Co. v. Brooks (Tex. Civ. App.) 54 S. W. 1056. The issues were submitted to the jury under instructions that substantially stated the law, and we find no error therein that would warrant a reversal of the case.

There was no error in admitting the ordinance of the city of Anadarko regulating the speed at which railroad trains might be operated within the corporate limits of the city. Plaintiff's cause of action was not founded on a violation of the ordinance, but the evidence tended to show that the cars were moving at a speed greater than that prohibited by the ordinance, and this testimony was offered for the purpose of establishing negligence. C., R. I. & P. R. Co. v. Martin, 42 Okla. 353, 141 Pac. 276.

The defendant Connors claims that the ordinance was inadmissible as to him because he had no control over the speed of the cars; that being within the control of the engineer. If this contention be conceded, still there was abundant evidence to support the verdict against him, and we are precluded from reversing the case for any errors in the admission of evidence unless upon an examination of the entire record it appears that such error has resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right. Revised Laws 1910, section 6005.

Finding no such error in the record, the judgment is affirmed.

All the Justices concur, except KANE, C. J., absent.